ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD CLARK GARNER II and<br>CLARK & GARNER, LLC,<br><br>Defendant. | **INFORMATION**<br><br>25 Cr. |

25 CRIM 117

**COUNT ONE**
**(15 U.S.C. § 1: Sherman Act Conspiracy)**

The United States of America, acting through its attorneys, charges:

**SHERMAN ACT CONSPIRACY**
**(15 U.S.C. § 1)**

**I.**
**DEFENDANTS AND CO-CONSPIRATORS**

During the period covered by this Information:

1. DEFENDANT DONALD CLARK GARNER II ("GARNER") resided in Brooklyn, New York. He was employed by the New York City Department of Education ("NYC DOE") as a Teacher Recruitment Manager from May 2011 to January 2016.

2. DEFENDANT CLARK & GARNER, LLC ("C&G") was a limited liability corporation located in Brooklyn, New York, and was solely owned by GARNER. GARNER formed C&G in or around February 2016, after ending his employment at the NYC DOE. C&G provided educational programming to schools and non-profits. At no time did C&G provide budget and procurement consulting services.

1

3. TranscendBS, LLC ("Transcend") was a limited liability corporation organized and existing under the laws of New York and located in Peekskill, New York. It advertised its services as budget and procurement consulting services to NYC DOE public schools.

4. Victor A. Garrido ("Garrido") was an individual residing in Peekskill, New York. Garrido was the sole owner of Transcend and was a former NYC DOE employee, who had provided business and procurement services to various NYC DOE schools.

5. CC-3 was a limited liability corporation organized and existing under the laws of New York and located in Hartsdale, New York. It advertised its services as providing financial planning services to educators, school administrators, and other individuals. At no time did CC-3 provide budget and procurement consulting services.

6. CC-4 was an individual residing in Hartsdale, New York. CC-4 was the sole owner of CC-3.

7. Various corporations and individuals, not named as defendants herein, participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance thereof.

8. Whenever in this Information reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by and through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

## II.
## BACKGROUND

9. During the time period covered by this Information, the NYC DOE's procurement policy required at least three bids for any purchase of professional services between $5,000 and $25,000. Pursuant to the policy, the "lowest responsive and responsible bidder" was awarded the

contract. The principal of the school soliciting the bids approved the award. For services over $25,000, the procurement policy required additional scrutiny and approval by the NYC DOE Division of Contracts and Purchasing.

## III.
## DESCRIPTION OF THE OFFENSE

10. Beginning at least as early as in or around November 2020 and continuing at least through in or around January 2023, in the Southern District of New York and elsewhere, DEFENDANT GARNER, DEFENDANT C&G, Garrido, Transcend, CC-3 and CC-4, and others known and unknown, knowingly entered into and engaged in a combination and conspiracy to rig bids for work orders for budget and procurement consulting services to the NYC DOE public schools. The combination and conspiracy engaged in by the Defendants and their co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate and foreign trade and commerce, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## IV.
## MANNER AND MEANS OF
## THE CONSPIRACY

12. The conspiracy was carried out through the following manner and means, among others:

   (a) discussing, agreeing, and determining in advance which company would win certain work orders at various NYC public schools;

   (b) discussing, creating, and agreeing in advance the bid price submissions for C&G and CC-3, with Garrido's assistance and direction, that would be deliberately higher than the prices charged by Transcend;

   (c) submitting, or causing to be submitted, artificially higher bids for C&G and CC-3 that were intended to lose work orders for budget and procurement consulting services to NYC DOE schools, in favor of Transcend;

   (d) engaging in the bid rigging activity described in subparagraphs (a) - (c) above, by communicating through phone calls, text messages, and emails within the Southern District of New York and elsewhere; and

   (f) submitting, by Garrido on behalf of Transcend, invoices to the NYC DOE, and accepting payments from the NYC DOE in connection with the bid rigging activity described in subparagraphs (a) - (c) above.

## V.
## TRADE AND COMMERCE

13. During the time period covered by this Information, the business activities of GARNER, C&G, and their co-conspirators that are the subject of this Information were within the flow of, and substantially affected, interstate trade and commerce. Records, documents, and communications which were necessary for the procurement and provision of services by the DEFENDANTS and their co-conspirators to the NYC DOE traveled in interstate and foreign commerce. In addition, a portion of NYC DOE's payments to Transcend were derived from the approximately $700 million in federal funding that the NYC DOE received each year during the time period covered by this Information.

4

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated:

/s/ *Gail Slater*
Gail Slater
Assistant Attorney General
Antitrust Division
U.S. Department of Justice

SEAN M. FARRELL
Chief, New York Office
Antitrust Division
U.S. Department of Justice

HELEN CHRISTODOULOU
MAIA LICHTENSTEIN
KATHRYN CARPENTER
Trial Attorneys, Antitrust Division
U.S. Department of Justice
201 Varick St., Room 1006
New York, New York 10014
212-335-8000

5